UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -

UNITED STATES OF AMERICA

  - v. -

VIKTOR KOZENY,
FREDERIC BOURKE, JR., and
DAVID PINKERTON,

           Defendants.

- - - - - - - - - - - - - - - X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAY 1 2 2005
```

SEALED

INDICTMENT

05 Cr.

**05 CRIM. 518**

JUDGE CASEY

## COUNT ONE

**(Conspiracy to Violate the Foreign Corrupt Practices Act
and the Travel Act)**

The Grand Jury charges:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.  The Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. §§ 78dd-1, *et seq.* (hereafter, the "FCPA") was enacted by Congress for the purpose of, among other things, making it unlawful for United States persons, businesses, and residents, directly or indirectly through an agent, to use any means or instrumentality of interstate or foreign commerce, including the United States mails, in furtherance of an offer, promise, authorization, or payment of money or anything else of value to a foreign government official to obtain or retain

business for, or direct business to, any person.

2.    The Travel Act, 18 U.S.C. § 1952, was enacted by Congress for the purpose of, among other things, making it unlawful for United States persons and businesses to travel in interstate or foreign commerce or use the mail or any facility in interstate commerce to promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on of any unlawful activity, including violations of the Foreign Corrupt Practices Act.

## BACKGROUND

### Azerbaijan and Privatization

3.    The Republic of Azerbaijan ("Azerbaijan") is located in the Caspian Sea region in southwestern Asia and borders Russia, Georgia, Armenia, Iran, and the Caspian Sea. Formerly a Republic within the Soviet Union, Azerbaijan has been a sovereign nation since 1991, with its capital in Baku. Azerbaijan has substantial deposits of oil and natural gas within its territory, both on land and offshore under the Caspian Sea. Azerbaijan's oil and gas reserves, as well as its oil and gas exploration, production, and refining facilities are held by the State Oil Company of the Azerbaijan Republic ("SOCAR").

4.    In the 1990's, Azerbaijan undertook to privatize certain of its state-owned enterprises. The privatization process in Azerbaijan was governed principally by the State

Privatization Program from 1995 to 1998, which specified the state-owned companies that would be privatized and how those companies would be privatized.  The privatization process was administered principally by Azerbaijan's State Property Committee (the "SPC").  By law, certain industries such as the oil industry were deemed strategic enterprises that could only be privatized at the direction of the president of Azerbaijan.  Thus, SOCAR was one of the state-owned companies that could only be privatized with a special decree from the president of Azerbaijan.

5.   As part of Azerbaijan's privatization program, each of its citizens received at no cost a voucher booklet comprised of four voucher coupons.  The voucher booklets and coupons were bearer instruments, freely tradable, and could be used to bid for shares of privatized enterprises at auction.  Typically, some shares of an enterprise that was being privatized were sold for vouchers at auction, other shares were sold for cash at auction, and still other shares were reserved for sale to the enterprise's employees.  Foreigners intending to participate in privatization or use vouchers at auction were required to purchase instruments called "options" - - specifically, in the ratio of one option for each voucher coupon held.  The SPC sold options at an official government price.  Vouchers and options typically were bought and sold using United States currency.

## THE RELEVANT PARTIES, ENTITIES AND OTHER INDIVIDUALS

### The Investment Consortium

6.      VIKTOR KOZENY, the defendant, was a Czech national, an Irish citizen, and a resident of the Bahamas. KOZENY held the following positions: (1) President and Chairman of the Board of Oily Rock Group Ltd. ("Oily Rock"); and (2) President and Chairman of the Board of Minaret Group Ltd. ("Minaret"). KOZENY was, through various investment vehicles, also a shareholder in Oily Rock, and the principal owner of Minaret. KOZENY exercised effective control over Oily Rock and Minaret. KOZENY was an agent of Oily Rock's shareholders and Oily Rock's and Minaret's co-investors, most of whom were American citizens and "domestic concerns," in connection with an investment in Azeri privatization vouchers and options. As such, KOZENY was an agent of "domestic concerns," as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1)(A).

7.      Oily Rock was a corporation organized under the laws of the British Virgin Islands with its principal place of business in Baku, Azerbaijan. Oily Rock invested in Azeri privatization vouchers and options for the primary purpose of acquiring at auction a controlling interest in SOCAR and, to a lesser extent, several other valuable Azeri State assets. Oily Rock was created by VIKTOR KOZENY, the defendant, in approximately July 1997. Thereafter, Oily Rock issued shares of

its stock to various individuals, including FREDERIC BOURKE, JR.,
the defendant, and entities.  Oily Rock also entered into co-
investment agreements with institutional investors (hereafter the
"co-investors"), whereby the parties agreed to pursue a joint
investment strategy in acquiring, safeguarding, and exercising at
auction Azeri privatization vouchers and options for the primary
objective of acquiring a controlling interest in SOCAR and, to a
lesser extent, other valuable Azeri State assets.

       8.   Minaret was a corporation organized under the laws
of the British Virgin Islands with its principal place of
business in Baku, Azerbaijan.  Minaret engaged in various
investment banking activities, including the acquisition and
safeguarding of Azeri privatization vouchers and options on
behalf of the defendants, Oily Rock, its shareholders, and its
co-investors.  To this end, Minaret was a party to the co-
investment agreement between Oily Rock and the co-investors.
Minaret was created by VIKTOR KOZENY, the defendant, in
approximately July 1997.  KOZENY was the President and Chairman
of the Board of Minaret, as well as Minaret's principal owner,
and he exercised effective control over Minaret.  Together, the
defendants, Oily Rock, Minaret, Oily Rock's shareholders, and the
co-investors will be referred to hereafter as the "investment
consortium."

9.    Omega Advisors, Inc. was a hedge fund, organized as a corporation under the laws of Delaware with its principal place of business in New York, New York.  On or about March 24, 1998, Omega Advisors, Inc. entered into a letter of intent with Oily Rock and Minaret.  Thereafter, on or about April 30, 1998, Omega Advisors, Inc. entered into a co-investment agreement with Oily Rock and Minaret through various of its subsidiaries and affiliates.  Omega Advisors, Inc. and its subsidiaries and affiliates (hereafter referred to collectively as "Omega") were "domestic concerns," as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1)(B).

10.    Pharos Capital Management, L.P. was an investment fund organized as limited partnership under the laws of Delaware with its principal place of business in New York, New York, until in or about September 1998, and thereafter in Red Bank, New Jersey.  Pharos Capital Management, L.P. was in the business of investing in emerging markets.  On or about March 24, 1998, Pharos Capital Management, L.P. entered into a letter of intent with Oily Rock and Minaret.  Thereafter, on or about April 30, 1998, Pharos Capital Management, L.P. entered into a co-investment agreement with Oily Rock and Minaret through various of its subsidiaries and affiliates.  Pharos Capital Management, L.P. and its subsidiaries and affiliates (hereafter referred to collectively as "Pharos") were "domestic concerns," as that term

is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1)(B).

11.   Clayton Lewis, a co-conspirator not named as a defendant herein, was a United States citizen and a principal of Omega Advisors, Inc. until in or about August 1998, and was the sole principal of Pharos.  During his tenure with Omega Advisors, Inc., Lewis and others negotiated Omega's and Pharos' Letters of Intent and Co-Investment Agreements with Oily Rock and Minaret. Lewis and others oversaw Omega's investment with VIKTOR KOZENY, the defendant, Oily Rock, and Minaret.  During the same period, Lewis also managed Pharos' investment with KOZENY, Oily Rock and Minaret.  Lewis was a "domestic concern," an officer, director, and shareholder of a "domestic concern," and an agent of a "domestic concern," as those terms are defined in 15 U.S.C. § 78dd-2(h)(1)(A)&(B).

12.   Thomas Farrell, a co-conspirator not named as a defendant herein, was a United States citizen and an employee of Oily Rock and VIKTOR KOZENY, the defendant.  Farrell worked in Oily Rock's offices in Baku, Azerbaijan, and reported directly to KOZENY.  Farrell supervised the purchase of privatization vouchers and options for the investment consortium, and was responsible for maintaining the security of the purchased vouchers and options in a vault controlled by Minaret.  Farrell was an agent of various members of the investment consortium, including FREDERICK BOURKE, JR., the defendant, and Omega.  As

such, Farrell was a "domestic concern" and an agent of "domestic concerns," as those terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1)(A)&(B).

13.   Hans Bodmer, a co-conspirator not named as a defendant herein, was a Swiss citizen and a lawyer with the Swiss law firm von Meiss Blum & Partners.  Bodmer represented VIKTOR KOZENY, the defendant, as well as Omega Advisors, Inc. and various other investors in connection with their investment in Azeri privatization vouchers and options with KOZENY, Oily Rock and Minaret.  As the lawyer and agent of Omega Advisors, Inc. and various other members of the investment consortium, Bodmer was an agent of a "domestic concern," as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1)(A).

14.   Hyposwiss Bank ("Hyposwiss") was a bank chartered under the laws of Switzerland with bank offices located in Switzerland and in Jersey, Channel Islands in the United Kingdom. Von Meiss Blum & Partners maintained operating and escrow accounts with Hyposwiss which were utilized for the receipt and transfer of moneys, primarily in the form of United States currency, from members of the investment consortium, including United States citizens and institutional investors, into Azerbaijan for the purpose of purchasing privatization vouchers and options.

15.   American International Group, Inc. was a
corporation organized under the laws of Delaware with its
principal place of business in New York, New York.  American
International Group, Inc. was a United States based international
insurance and financial services organization.  On or about June
4, 1998, American International Group, Inc., through a subsidiary
and affiliate called Marlwood Commercial Inc., entered into an
investment agreement with Pharos.  On or about June 8, 1998,
American International Group, Inc., through Marlwood Commercial
Inc., entered into an assumption agreement and, thereby, a co-
investment agreement with Oily Rock and Minaret.  American
International Group, Inc. and its subsidiaries and affiliates
(hereafter referred to collectively as "AIG") were "domestic
concerns," and AIG's subsidiaries and affiliates were also
"agents of domestic concerns," as those terms are defined in the
FCPA, 15 U.S.C. § 78dd-2(h)(1)(B).

16.   DAVID PINKERTON, the defendant, was a United
States citizen and an employee of AIG responsible for initiating
and supervising AIG's investment in Azeri privatization with
VIKTOR KOZENY, the defendant, Oily Rock and Minaret, from AIG's
offices in New York, New York.  PINKERTON held the position of
Managing Director of AIG Global Investment Corporation and he was
in charge of AIG's private equity group.  PINKERTON was a
"domestic concern," an officer, director and shareholder of a

"domestic concern," and an agent of a "domestic concern," as those terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1)(A)&(B).

17.   FREDERIC BOURKE, JR., the defendant, was a United States citizen and investor with VIKTOR KOZENY, the defendant, in Azeri privatization.   In or about March and July 1998, BOURKE twice invested in Oily Rock through Blueport International, Ltd., an investment vehicle in which BOURKE was the principal shareholder.   Other investors were his family members and friends.   Blueport International, Ltd. invested approximately $8,000,000 in Oily Rock shares, approximately $5,300,000 of which BOURKE invested personally.   BOURKE was a "domestic concern," as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1)(A).

**The Azeri Government Officials**

18.   Members of the investment consortium made a series of corrupt promises, payments, and offers of payments to senior officials of the Government of Azerbaijan in order to enable the investment consortium, and protect the investment consortium's ability, to purchase vouchers and options and to bid at auction for interests in SOCAR and other valuable Azeri State assets. These senior officials were: (a) a senior official of the Government of Azerbaijan (the "Senior Azeri Official"); (b) a senior official of SOCAR, Azerbaijan's national oil company (the "SOCAR Official"); and (c) two senior officials of the SPC ("SPC

-10-

Official #1" and "SPC Official #2," respectively, and together, the "SPC Officials"). Each of these senior officials of the Government of Azerbaijan was a "foreign official" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2)(A). These four senior Azeri government officials collectively shall be referred to as the "Azeri Officials" in this Indictment.

## OVERVIEW OF THE CONSPIRACY TO BRIBE

19.  Beginning in or about August 1997 and continuing until in or about 1999, VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury offered, paid and caused to be paid bribes to the Azeri Officials and/or their designees to induce the Azeri Officials to allow the investment consortium to participate in privatization, to ensure the privatization of SOCAR and other valuable Azeri State assets, and to permit the investment consortium to acquire a controlling interest in SOCAR and other valuable Azeri State assets.

20.  Beginning in or about July 1997 up to and including in or about July 1998, various individual investors including FREDERIC BOURKE, JR., the defendant, purchased shares of Oily Rock. BOURKE made his initial investment in Oily Rock, as well as a subsequent investment, based in part on his understanding that VIKTOR KOZENY, the defendant, had offered,

paid, authorized the payment of, and would pay bribes to the
Azeri Officials to ensure Oily Rock's and the investment
consortium's successful participation in the privatization of
SOCAR.

21.   Beginning in or about March 1998 up to and
including in or about September 1998, Omega, Pharos and AIG
entered into various agreements, direct and indirect, with Oily
Rock and Minaret in order to participate in Azeri privatization.
Omega, Pharos and AIG funded their respective investments in
privatization vouchers and options through and in concert with
Oily Rock and Minaret.  DAVID PINKERTON, the defendant, Clayton
Lewis, a co-conspirator not named as a defendant herein, and
others known and unknown to the Grand Jury caused their
respective institutional employers to make, and recommended that
they make, substantial investments with VIKTOR KOZENY, the
defendant, and Oily Rock and Minaret, based in part on their
understanding that KOZENY had offered, paid, authorized the
payment of, and would pay bribes to the Azeri Officials to ensure
Oily Rock and the investment consortium's participation in the
privatization of SOCAR.

22.   VIKTOR KOZENY, the defendant, acting on his own
behalf and as an agent of FREDERIC BOURKE, JR. and DAVID
PINKERTON, the defendants, Clayton Lewis, Hans Bodmer, and Thomas
Farrell, co-conspirators not named as defendants herein, Omega,

AIG, and others known and unknown to the Grand Jury offered, paid, and authorized the payment of bribes to the Azeri Officials to ensure Oily Rock and the investment consortium's successful participation in the privatization of SOCAR.

23.   The bribes offered, paid and authorized to be paid to the Azeri Officials took numerous forms, including the following:

- direct cash payments and wire transfers of millions of dollars to the Azeri Officials and members of their families;

- the promise of two-thirds of the profits realized by Oily Rock from the privatization of SOCAR and other valuable Azeri State assets, for the benefit of the Azeri Officials;

- the transfer of two-thirds of Oily Rock's vouchers and options to the Azeri Officials;

- an agreement to purchase vouchers from SPC Official #2 and his designees, including a relative of SPC Official #2;

- the issuance of approximately $300,000,000 worth of Oily Rock shares to the Azeri Officials;

- jewelry and luxury items valued in excess of $600,000 to the Azeri Officials; and

- medical expenses, private jet transportation, hotel accommodations, clothing, meals and other gifts and things of value to the Azeri Officials.

## THE BRIBERY SCHEME

### I.   Background

24.   In or about mid-May 1997, while traveling through a number of countries that were former republics of the Soviet

Union, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants,
Thomas Farrell, a co-conspirator not named as a defendant herein,
and others known and unknown to the Grand Jury, identified an
investment opportunity in Azerbaijan, specifically, an investment
in privatization vouchers.

25.   Beginning in or about early July 1997, VIKTOR
KOZENY, the defendant, directed Thomas Farrell, a co-conspirator
not named as a defendant herein, and others known and unknown to
the Grand Jury to purchase privatization vouchers and options on
behalf of Oily Rock and Minaret.   Thereafter, Farrell and others
known and unknown to the Grand Jury made voucher and option
purchases principally using United States currency that was flown
into Azerbaijan either on KOZENY's private jet or on planes
chartered by KOZENY.

## II.   Initial Bribery of an Azeri Government Official

26.   In or about July 1997, VIKTOR KOZENY, the
defendant, Thomas Farrell, a co-conspirator not named as a
defendant herein, and others known and unknown to the Grand Jury
delivered approximately $10,000 in cash to an unidentified Azeri
national in Baku, Azerbaijan in order to secure a meeting with an
Azeri government official regarding privatization.   After
delivering the cash to the unidentified Azeri national in a
parking lot outside the Azeri Presidential Apparatus Building,
KOZENY, Farrell, and others known and unknown to the Grand Jury

-14-

entered the building and proceeded to an office where KOZENY and Farrell participated in a meeting with a person they believed to be an Azeri government official regarding KOZENY's investment in privatization.  This person, in substance, offered to help KOZENY in any way he could.

### III.  Protection Payments to Chechens

27.  In or about July 1997, in an effort to help safeguard vouchers and options that VIKTOR KOZENY, the defendant, Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury had purchased, KOZENY, Farrell and others known and unknown made approximately thirty (30) separate "protection" payments, totaling more than $1,000,000, to a Chechen individual in Baku.

### IV.  The "Two-Thirds Transfer"

28.  VIKTOR KOZENY, the defendant, and Oily Rock employed several Russian nationals in Baku, Azerbaijan for the purpose of purchasing vouchers and options and providing security services to safeguard vouchers and options.  Among the job responsibilities of Thomas Farrell, a co-conspirator not named as a defendant herein, was the supervision of these Russian nationals, sometimes called "couriers."  In or about August 1997, one of these Russian couriers was arrested by Azeri authorities while making a purchase of vouchers.  At the time of his arrest, the courier had approximately $1,000,000 in United States

currency and $1,000,000 worth of purchased vouchers in his possession.

29.   In or about August 1997, following the arrest of the courier, VIKTOR KOZENY, the defendant, Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, participated in a series of meetings with the SOCAR Official and the SPC Officials.  Over the course of those meetings, KOZENY and the Azeri Officials reached an agreement whereby KOZENY agreed to transfer two-thirds of Oily Rock's vouchers and options to the Azeri Officials and to give the Azeri Officials two-thirds of the profits arising from the investment consortium's participation in the privatization of SOCAR and other valuable Azeri State assets.  KOZENY also agreed to pay an up-front entry fee specified by SPC Official #2. KOZENY further agreed to acquire a minimum of 1,000,000 voucher booklets and 4,000,000 corresponding options.  Finally, KOZENY agreed to make voucher purchases from individuals identified by SPC Official #2, including a relative of SPC Official #2, resulting in profits and commissions for SPC Official #2 and members of his family.  In return, the Azeri Officials agreed, through SPC Official #2, to allow KOZENY's and Oily Rock's continued acquisition of privatization vouchers and options, to permit KOZENY and the investment consortium to acquire a controlling interest in SOCAR upon its privatization, and to

relieve KOZENY of his commitment to making protection payments to the Chechens.  This arrangement will be referred to hereafter as the "two-thirds transfer."

30.   In order to effect the two-thirds transfer, VIKTOR KOZENY, the defendant, directed Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, to distribute Oily Rock's vouchers and options evenly among 45 holding companies and to transfer beneficial ownership of 28 of those companies (approximately two-thirds of 45) to three parent companies - - Cudina Financial SA, Estoria Portfolio SA, and Enkridge Holding Inc. - - under the control of the Azeri Officials.

31.   VIKTOR KOZENY, the defendant, and the Azeri Officials also entered into a sham credit arrangement designed to conceal the transfer of beneficial ownership of the 28 holding companies and the vouchers and options held by those companies to the Azeri Officials.  To implement this sham arrangement, KOZENY directed Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, to cause an entity called Jemur Corp. to enter into three $100,000,000 credit facility agreements, one with each of the three parent companies referred to in paragraph 29 above.  Each agreement provided that the full loan amount plus interest was to be repaid by the earlier of June 30, 1998 or 30 days after the conversion

of privatization vouchers into shares of a privatized enterprise. KOZENY also directed Bodmer to execute separate side letter agreements suspending the payment of any interest on the loans.

### V.   Raising The Hurdle To Two Million Voucher Booklets

32.   In or about December 1997, SPC Official #2 informed Thomas Farrell, a co-conspirator not named as a defendant herein, and through him VIKTOR KOZENY, the defendant, that the Azeri Officials had doubled, from 1,000,000 to 2,000,000, the minimum number of voucher booklets that Oily Rock had to acquire before bidding for SOCAR or other valuable Azeri State assets, as originally agreed during negotiations over the two-thirds transfer.

### VI.   Recruitment of Investors on Wall Street

33.   From in or about February 1998 up to and including in or about April 1998, VIKTOR KOZENY, the defendant, Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury met with representatives of various institutional investors including Omega and Pharos, through Clayton Lewis, a co-conspirator not named as a defendant herein, and others, for the purpose of soliciting additional investment in Oily Rock and Minaret in Azeri privatization.

**Omega and Pharos**

34.  On or about February 27, 1998 and on or about March 11, 1998, VIKTOR KOZENY, the defendant, and others known and unknown to the Grand Jury met with representatives of Omega and Pharos, including Clayton Lewis, a co-conspirator not named as a defendant herein, to solicit Omega's and Pharos' respective investments with KOZENY, Oily Rock and Minaret in Azeri privatization.

35.  From on or about February 27, 1998, through in or about the end of March 1998, while conducting due diligence on behalf of Omega and Pharos, Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, learned that in connection with Oily Rock's investment in Azeri privatization, VIKTOR KOZENY, the defendant, had entered into a corrupt financial relationship with the Azeri Officials that gave those officials a personal financial incentive to permit KOZENY's successful participation in the privatization of SOCAR.  Lewis and others known and unknown to the Grand Jury also learned that KOZENY had obtained non-public information about the Azeri government's intent to privatize SOCAR, including the expected timing of that privatization.

36.  On or about March 24, 1998, Omega, Pharos, Oily Rock and Minaret executed a Letter of Intent in connection with investments by Omega and Pharos in Azeri privatization.

-19-

37. On or about March 30, 1998, Hans Bodmer, a co-conspirator not named as a defendant herein, met in New York, New York with Clayton Lewis, a co-conspirator not named as a defendant herein, and other representatives of Omega and Pharos to discuss further Omega's and Pharos' respective investments in Azeri privatization.

38. On or about April 30, 1998, Omega, Pharos, Oily Rock and Minaret executed a Co-Investment Agreement governing investments by Omega and Pharos in Azeri privatization and the acquisition by Omega and Pharos of privatization vouchers and options.

39. Between on or about March 20, 1998, and on or about July 23, 1998, Omega purchased a total of approximately $126,000,000 in Azeri privatization vouchers and options through its Letter of Intent and Co-Investment Agreement with Oily Rock and Minaret.  In order to make these purchases, from on or about March 27, 1998 through on or about June 11, 1998, Omega wired funds from or through accounts in New York, New York to accounts in Switzerland, including accounts at Hyposwiss under the control of VIKTOR KOZENY, the defendant, and Hans Bodmer, a co-conspirator not named as a defendant herein.

40. Between on or about March 20, 1998, and on or about June 10, 1998, Pharos purchased a total of approximately $25,000,000 in Azeri privatization vouchers and options through

its Letter of Intent and Co-Investment Agreement with Oily Rock and Minaret.  In order to make these purchases, from on or about March 27, 1998 through on or about May 8, 1998, Pharos wired funds from an account in New York to an account at Hyposwiss under the control of Hans Bodmer, a co-conspirator not named as a defendant herein.

41.  Hans Bodmer, a co-conspirator not named as a defendant herein, and others at his direction, subsequently withdrew the approximately $151,000,000 that was invested by Omega and Pharos combined and flew this money by private and charter airplane into Azerbaijan, where it was used primarily to purchase vouchers and options.

**American International Group**

42.  On or about March 26, 1998, Clayton Lewis, a co-conspirator not named as a defendant herein, contacted DAVID PINKERTON, the defendant, to solicit AIG's investment with VIKTOR KOZENY, the defendant, Oily Rock, Minaret, Omega, and Pharos in Azeri privatization.

43.  On or about April 1, 1998, DAVID PINKERTON, the defendant, and a co-conspirator not named as a defendant herein met with Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, to discuss further an investment by AIG with VIKTOR KOZENY, the defendant, Oily Rock, Minaret, Omega, and Pharos in Azeri

privatization.

44.   Between on or about April 1, 1998, and in or about early June 1998, while conducting due diligence on behalf of AIG, DAVID PINKERTON, the defendant, and a co-conspirator not named as a defendant herein learned from Clayton Lewis, a co-conspirator not named as a defendant herein, and another co-conspirator not named as a defendant herein that VIKTOR KOZENY, the defendant, had entered into a corrupt financial relationship with the Azeri Officials that gave those officials a personal financial incentive to permit KOZENY's successful participation in the privatization of SOCAR.   PINKERTON also learned that KOZENY had obtained non-public information about the Azeri government's intent to privatize SOCAR, including the expected timing of that privatization.

45.   On or about June 4, 1998, AIG, through its subsidiary Marlwood Commercial, Inc., Pharos, and a subsidiary of Pharos executed an Investment Agreement.   On or about June 8, 1998, AIG, through its subsidiary Marlwood Commercial Inc., executed an Assumption Agreement, which conferred upon AIG the rights and obligations of a signatory to the April 30, 1998 co-investment Agreement among Omega, Pharos, Oily Rock and Minaret.

46.   In or about early June 1998, AIG purchased a total of approximately $15,000,000 in Azeri privatization vouchers and options through its Assumption Agreement and Co-Investment

-22-

Agreement with Omega, Pharos, Oily Rock and Minaret.   In order to make these purchases, from on or about June 8, 1998 through on or about June 11, 1998, AIG wired funds from or through accounts in New York, New York to accounts in Switzerland, including an account at Hyposwiss, under the control of VIKTOR KOZENY, the defendant.

47.  Hans Bodmer, a co-conspirator not named as a defendant herein, and others at his direction, subsequently withdrew the approximately $15,000,000 that was invested by AIG and flew this money by private and charter airplane into Azerbaijan, where it was used primarily to purchase vouchers and options.

### VII. Board Positions and The United States Advisory Companies

48.  In or about April and May 1998, VIKTOR KOZENY, the defendant, and Hans Bodmer, a co-conspirator not named as a defendant herein, on behalf of Oily Rock, invited FREDERIC BOURKE, JR., the defendant, Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury to serve as members of Oily Rock's Board of Directors and its Executive Committee.  As noted earlier, Oily Rock was incorporated in the British Virgin Islands and had its principal place of business in Baku, Azerbaijan.

49.  In or about April and May 1998, VIKTOR KOZENY, the defendant, and Hans Bodmer, a co-conspirator not named as a

defendant herein, on behalf of Minaret, invited FREDERIC BOURKE, JR., the defendant, Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury to serve as members of Minaret's Board of Directors and its Executive Committee.  As noted earlier, Minaret was incorporated in the British Virgin Islands and had its principal place of business in Baku.

50.  In or about May and June 1998, FREDERIC BOURKE, JR., the defendant, Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, informed VIKTOR KOZENY, the defendant, that they would only serve as board members and officers of affiliated advisory and consulting companies to be created in the United States.  BOURKE, Lewis, and others known and unknown to the Grand Jury concluded that taking positions as board members and officers of United States companies affiliated with Oily Rock and Minaret would shield them from liability under the FCPA and would insulate them from any responsibility for corrupt payments made by KOZENY, Oily Rock and Minaret.

51.  On or about July 7, 1998, Oily Rock U.S. Advisors, Inc. ("ORUSA") was incorporated in the State of Delaware.  On or about July 22, 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury,

agreed to serve as members of the Board of Directors of ORUSA.
KOZENY agreed to serve as Chairman, and BOURKE and Lewis agreed
to serve as Vice-Presidents of the Board of Directors of ORUSA.

52.  On or about July 7, 1998, Minaret Group U.S.
Advisors, Inc. ("MGUSA") was incorporated in the State of
Delaware.  On or about July 22, 1998, VIKTOR KOZENY and FREDERIC
BOURKE, JR., the defendants, and others known and unknown to the
Grand Jury, agreed to serve as members of the Board of Directors
of MGUSA.  KOZENY agreed to serve as Chairman, and BOURKE as
Vice-President of the Board of Directors of MGUSA.

### VIII. Share Capital Increase for the Benefit of the Azeri Officials

53.  In or about June 1998, VIKTOR KOZENY, the
defendant, and Hans Bodmer, a co-conspirator not named as a
defendant herein, advised FREDERIC BOURKE, JR., the defendant,
Clayton Lewis, a co-conspirator not named as a defendant herein,
and others known and unknown to the Grand Jury, that an
additional 300,000,000 shares of Oily Rock (with a par value of
$1 per share) would be issued, and that these shares would be
transferred to one or more of the Azeri Officials.

54.  On or about June 26, 1998, Oily Rock shareholders
approved an increase of Oily Rock's authorized share capital from
$150,000,000 to $450,000,000.

55.  On or about July 8, 1998, at an ORUSA board
meeting in New York, New York, Hans Bodmer, a co-conspirator not

named as a defendant herein, advised FREDERIC BOURKE, JR., the
defendant, Clayton Lewis, a co-conspirator not named as a
defendant herein, and others known and unknown to the Grand Jury,
that an additional 300,000,000 shares of Oily Rock had been
authorized and would be issued.

### IX.   Other Bribes

### Cash and Wire Transfers

56.  From in or about mid-May 1998 through on or about
June 25, 1998, bribes totaling more than $11,000,000 were paid to
the Azeri Officials as follows:

- millions of dollars in United States currency was
  hand-delivered to SPC Official #2 in his SPC office;

- $3,000,000 was wired to two accounts held for the
  benefit of SPC Official #2;

- $2,000,000 was wired to two accounts held for the
  benefit of the son of SPC Official #2;

- $900,000 was wired to a client account maintained by
  Hans Bodmer, a co-conspirator not named as a defendant
  herein, at Credit Suisse Zurich for the benefit of SPC
  Official #2.

- $500,000 was wired to an account held for the benefit
  of SPC Official #1; and

- $500,000 was wired to an account held for the benefit
  of a relative of SPC Official #1.

### Gifts of Jewelry and Luxury Items

57.  On or about May 9, 1998, VIKTOR KOZENY, the
defendant, and others known and unknown to the Grand Jury,
arranged for a representative of London jeweler Asprey & Garrard

to travel from London to Baku, Azerbaijan and personally deliver six gifts worth approximately £386,750 (approximately $630,480) to the SPC Officials and others in Baku on the occasion of the Senior Azeri Official's birthday on May 10, 1998.  KOZENY pre-selected a black six-piece, monogrammed alligator desk set priced at £25,000 (approximately $40,755.01), as a gift from himself to the Senior Azeri Official.  The five remaining gifts were presented to the SPC Officials and others in order for each of them to select from among the gifts a present for the Senior Azeri Official.  The SPC Officials and the others selected all five gifts, which included the following:

- a box (enameled flowers on lid) - 18 carat yellow gold, multicolor enamel & diamond; worth £235,000 (approximately $383,097.09);

- a bell push by Faberge - 18 carat yellow gold, nephrite jade & cabochon ruby; worth £7,500 (approximately $12,226.50);

- a bell push - 18 carat gold; worth £30,000 (approximately $48,906.01);

- a triangular photo frame with clock - 18 carat yellow gold, mother of pearl, tourmaline & enamel; worth £62,000 (approximately $101,072.42); and

- a "daisy" necklace - 18 carat white gold & gems; a "daisy" bracelet - 18 carat white gold & gems; and a pair of large "daisy" earrings - 18 carat white gold & amethyst; together worth £27,250 (approximately $44,422.96).

58.  On or about May 13, 1998, Minaret wired $593,106.25 to Asprey & Garrard in London, the full sum due and owing for the items listed above, less credit for payment

-27-

previously made for Kozeny's personal gift of the alligator desk set.

## Shopping Spree

59. On or about June 3, 1998, at the request of SPC Official #2, VIKTOR KOZENY, the defendant, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, caused Oily Rock to wire approximately $1,000,000 into a bank account for the benefit of the Senior Azeri Official's daughter, for the stated purpose of funding a shopping spree in London for the Senior Azeri Official's daughter.

## Airfare

60. From in or about March 1998, through in or about September 1998, VIKTOR KOZENY, the defendant, directed others known and unknown to the Grand Jury to arrange for the SPC Officials to travel by commercial airlines, and on private jets owned, leased or chartered by KOZENY.  KOZENY paid the costs associated with these trips through Oily Rock and Minaret.

## Medical and Related Expenses

61. In or about early March 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, and others known and unknown to the Grand Jury, arranged for SPC Official #1 to receive medical treatment during a visit by SPC Official #1 to New York, New York.  KOZENY, through Oily Rock or Minaret, paid

all costs associated with SPC Official #1's medical treatment, and related hotel, meal and other expenses.

62. In or about May 1998, and in or about September 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, and others known and unknown to the Grand Jury, arranged for SPC Official #2 to receive medical treatment during his visits to New York.  KOZENY, through Oily Rock or Minaret, paid all costs associated with SPC Official #2's visit for purposes of medical treatment, including related hotel, meal and shopping expenses. These shopping expenses were in part for the purchase by SPC Official #2 of designer clothing at a high-end department store located in the New York, New York metropolitan area.

## STATUTORY ALLEGATIONS

63. From in or about May 1997, up to and including in or about 1999, in the Southern District of New York and elsewhere, VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States; to wit, violations of (a) the FCPA, Title 15, United States Code, Section 78dd-2; and (b) the Travel Act, Title

18, United States Code, Section 1952(a)(3)(A).

64. It was a part and object of the conspiracy that VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, being American citizens and "domestic concerns" as that term is defined in the FCPA, or being agents of "domestic concerns," would and did make use of the mails and any means and instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, and offer, gift, promise to give, and authorization of the giving of anything of value to foreign officials for purposes of (a) influencing acts and decisions of such foreign officials in their official capacity, (b) inducing such foreign officials to do and omit to do acts in violation of the lawful duty of such officials, and (c) inducing such foreign officials to use their influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentality, in order to assist VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury in obtaining and retaining business for and with, and directing

-30-

business to, any person, in violation of Title 15, United States Code, Section 78dd-2.

65. It was a further part and an object of the conspiracy that VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury unlawfully, willfully, and knowingly, would and did travel in interstate and foreign commerce and use the mail and facilities in interstate and foreign commerce, with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, violations of the anti-bribery provisions of the FCPA, 15 U.S.C. § 78dd-2, and thereafter would and did perform and attempt to perform acts to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of such unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3)(A).

## MEANS AND METHODS OF THE CONSPIRACY

66. Among the means and methods by which VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Hans Bodmer, Clayton Lewis, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, carried out the objects of the

-31-

conspiracy were the following:

a.    VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Hans Bodmer, Clayton Lewis, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, identified an investment opportunity in the Republic of Azerbaijan under a state program to privatize industries, potentially including the state oil company SOCAR.

b.    VIKTOR KOZENY, the defendant, and others known and unknown to the Grand Jury, in order to ensure KOZENY's and others' ability to participate in and realize profits from Azeri privatization, negotiated a deal with the Azeri Officials which provided to the Azeri Officials and members of their families: (1) a 2/3 interest in the investment and its profits; (2) financial benefits from the sale of privatization vouchers and realization of commissions and profits from those sales; and (3) cash, gifts, travel, lodging expenses, and other things of value.

c.    VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, Clayton Lewis and Hans Bodmer, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, traveled on multiple occasions to Azerbaijan to review the investment opportunity.

d.   VIKTOR KOZENY, the defendant, informed FREDERIC BOURKE, JR., the defendant, and Clayton Lewis, a co-conspirator not named as a defendant herein, that KOZENY had given the Azeri Officials a personal financial interest in KOZENY's privatization investment in order to ensure the success of that investment.

e.   Clayton Lewis, a co-conspirator not named as a defendant herein, informed DAVID PINKERTON, the defendant, that VIKTOR KOZENY, the defendant, had given the Azeri Officials a personal financial interest in KOZENY's privatization investment in order to ensure the success of that investment.

f.   VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Hans Bodmer, Clayton Lewis, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, wired and caused to be wired money from various financial institutions in New York, New York, and elsewhere to accounts at Hyposwiss for the purchase of vouchers and options in Azerbaijan.

g.   VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, Hans Bodmer, Clayton Lewis, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, caused money deposited in Hyposwiss accounts to be converted to United States currency and flown by KOZENY, Bodmer, and others known and unknown to the Grand Jury,

-33-

from Switzerland to Azerbaijan by private and charter jets for the purpose of, among other things, purchasing vouchers and options.

   h. VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Hans Bodmer, Clayton Lewis, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, purchased and caused to be purchased privatization vouchers from SPC Official #2 or individuals designated by SPC Official #2, resulting in profits and commissions for SPC Official #2 and members of his family.

   i. VIKTOR KOZENY, the defendant, and Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, paid or caused to be paid millions of dollars in United States currency to SPC Official #2 in his office at the SPC as part of an effort to bribe SPC Official #2 and the Azeri Officials generally.

   j. VIKTOR KOZENY, the defendant, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, directed and caused to be directed that funds be wired to various bank accounts, including accounts in Switzerland and the Netherlands, for the benefit of the Azeri Officials and members of their families.