UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

UNITED STATES OF AMERICA

- against -

VIKTOR KOZENY, FREDERIC
BOURKE, JR., and DAVID
PINKERTON,

Defendants.

------------------------------------------------------- X

OPINION AND ORDER

05 Cr. 518 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I. INTRODUCTION

This prosecution relates to alleged violations of the Foreign Corrupt Practices Act ("FCPA") by defendant David Bourke and others in connection with the privatization of the State Oil Company of the Azerbaijan Republic ("SOCAR"). Bourke has requested that the Court make determinations as to the content of applicable law in Azerbaijan and instruct the jury on certain defenses that might be available under the law of Azerbaijan. The Government and Bourke were unable to agree on the contents or applicability of that law. To resolve this disagreement, the Court held a hearing on September 11, 2008. This Opinion and Order contains the Court's determinations.

1

## II. BACKGROUND

### A. Facts

The Government's allegations in this case are complex, and it is unnecessary to recite them here. The relevant facts are as follows: SOCAR is the state oil company of the Republic of Azerbaijan.[1] In the mid-1990s, Azerbaijan began a program of privatization.[2] The program gave the President of Azerbaijan, Heydar Aliyev, discretionary authority as to whether and when to privatize SOCAR.[3] Bourke and others allegedly violated the FCPA by making payments to Azeri officials to encourage the privatization of SOCAR and to permit them to participate in that privatization.[4] Bourke argues that the alleged payments were legal under Azeri law and thus under the FCPA (which provides an affirmative defense for payments that are legal under relevant foreign law) because they were the product of extortion.[5] He also argues that pursuant to Azeri law, any

---

[1] *See generally Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 479 F. Supp. 2d 376, 378 (S.D.N.Y. 2007).

[2] *See* Indictment of Vicktor Kozeny, Frederic Bourke, Jr., and David Pinkerton ("Ind.") ¶ 4.

[3] *See id.*

[4] Ind. ¶ 18.

[5] *See* Supplemental Memorandum of Law in Support of Defendant Frederic A. Bourke's Motion Regarding Azeri Law Issues ("Def. Supp. Br.") at 4;

2

criminality associated with the payments was excused when he reported them to the President of Azerbaijan.[6]

The Government and Bourke have submitted expert reports. The Government's expert is William E. Butler, John Edward Fowler Distinguished Professor of Law at the Dickinson School of Law, Pennsylvania State University, and Emeritus Professor of Comparative Law at the University of London.[7] Bourke's expert, Paul B. Stephan, is the Lewis F. Powell, Jr. Professor of Law at the University of Virginia.[8] On September 11, 2008, the Court held a hearing in which the experts testified as to their interpretations of the relevant law.[9]

---

*see also Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736 (S.D.N.Y. 2004) (addressing claims by private investors in SOCAR privatization alleging extortion and various corrupt practices).

[6] *See* Def. Supp. Br. at 4.

[7] *See* 8/21/08 Declaration of the Government's Expert Professor William E. Butler ("Butler Decl.") ¶ 1.

[8] *See* 4/7/08 Declaration of Defendant's Expert Professor Paul B. Stephan ("Stephan Decl.") ¶ 1.

[9] *See* 9/11/08 Transcript ("Tr.").

3

## B. The Legal System of Azerbaijan

Azerbaijan, a sovereign nation in the Caspian Sea region that borders Russia, was formerly integrated as a Republic of the Soviet Union.[10] Azerbaijan declared independence in 1991.[11] The current criminal code of Azerbaijan took effect in 2000.[12] In Azerbaijan, decisions of most courts are not considered binding authority; however, the highest court in Azerbaijan has the authority to give official interpretations of the Azeri Constitution and laws.[13]

## III. LEGAL STANDARD

### A. The FCPA

The FCPA prohibits giving something of value for the purpose of "(i) influencing any act or decision of [a] foreign official in his official capacity, (ii) inducing such foreign official to do or omit any act in violation of the lawful duty of such official, or (iii) securing any improper advantage . . . to obtain[] or retain[] business for or with . . . any person."[14] The law provides an affirmative defense

---

[10] *See* Ind. ¶ 3.

[11] *See* The Constitutional Act on Restoration of the State Independence of the Republic of Azerbaijan (Oct. 18, 1991).

[12] *See* Stephan Decl. ¶ 5.

[13] *See id.*

[14] 15 U.S.C. § 78dd-2(a)(1)(A).

4

for payments that are "lawful under the written laws and regulations" of the country.[15]

## B. Foreign Law

"Though foreign law once was treated as an issue of fact, it now is viewed as a question of law and may be determined through the use of any relevant source, including expert testimony."[16] Rule 26.1 of the Federal Rules of Criminal Procedure provides that "[a] party intending to raise an issue of foreign law must provide the court and all parties with reasonable written notice. Issues of foreign law are questions of law, but in deciding such issues a court may consider any relevant material or source – including testimony – without regard to the Federal Rules of Evidence."

## IV. DISCUSSION

During the relevant period, Article 170 of the Azerbaijan Criminal Code ("ACC") provided that "[t]he receiving by an official . . . of a bribe in any form whatsoever for the fulfillment or the failure to fulfill any action in the interest of the person giving the bribe which the official should have or might perform

---

[15] *Id.* § 78dd-2(c).

[16] *United States v. Vilar*, No. 05 Cr. 621, 2007 WL 1075041, at *55 n.35 (S.D.N.Y. Apr. 4, 2007).

5

with the use of his employment position . . . shall be punished by deprivation of freedom . . . ."[17] Professor Stephan asserts that during the same period, Article 171 of the ACC provided that "[g]iving a bribe shall be punished by deprivation of freedom for a term of from three to eight years. . . . A person who has given a bribe shall be *free* from criminal responsibility if with respect to him there was extortion of the bribe or if that person after giving the bribe voluntarily made a report of the occurrence."[18] Professor Butler believes that a more accurate translation of the last clause is "[a] person who has given a bribe shall be *relieved* from criminal responsibility if extortion of the bribe occurred with respect to him or if this person after giving the bribe voluntarily stated what happened."[19]

The Supreme Court of the U.S.S.R. interpreted Article 171 in a Resolution published in 1990.[20] The parties agree that the Resolution is relevant

---

[17] Butler Decl. ¶ 10.

[18] Stephan Decl. ¶ 3 (emphasis added).

[19] Butler Decl. ¶ 10 (emphasis added). The word appears to be "освобождение", or "osvobozhdenie," which is generally translated as "liberation," but can also mean "relieved." *See* Tr. at 174. *See also Освобождение* (Deutsche Film-Aktiengesellschaft / Mosfilm 1969), a Soviet film that depicts the "liberation" of Berlin during World War II.

[20] *See Resolution of the Plenum of the Supreme Court of the U.S.S.R. of March 30, 1990, No. 3, "On Court Practice in Bribery Cases,"* ("Res.") Ex. C to Stephan Decl.

to the Azeri courts' interpretation of the Article.[21] It defines extortion as "a demand by an official for a bribe under the threat of carrying out actions that could do damage to the legal interests of the briber . . . ."[22] The Resolution further explains that "a voluntary declaration of having committed the crime absolves from criminal responsibility not only the bribe giver but his accomplices."[23] Finally, the Resolution provides that "[t]he absolution of a bribe-giver from criminal responsibility because of extortion of the bribe or the voluntary declaration of the giving of the bribe . . . does not signify an absence in the actions of such persons of the elements of an offense. For that reason, they cannot be considered victims and are not entitled to claim restitution of the items of value given as bribes."[24]

As a threshold matter, I must determine the meaning of "relieved (or free) from criminal responsibility." Bourke contends that if an individual is relieved of criminal responsibility, his action was "lawful" and he may thus avail himself of the FCPA's affirmative defense. I disagree.

---

[21]     *See* Stephan Decl. ¶ 7; Butler Decl. ¶ 16.

[22]     Res. pt. 11.

[23]     *Id.* pt. 19.

[24]     *Id.* pt. 20.

7

For purposes of the FCPA's affirmative defense, the focus is on the *payment*, not the payer.[25] A person cannot be guilty of violating the FCPA if the payment was *lawful* under foreign law. But there is no immunity from prosecution under the FCPA if a person could not have been prosecuted in the foreign country due to a technicality (e.g., time-barred) or because a provision in the foreign law "relieves" a person of criminal responsibility. An individual may be prosecuted under the FCPA for a payment that violates foreign law even if the individual is relieved of criminal responsibility for his actions by a provision of the foreign law.

## A. The Reporting Exception

As Professor Butler observes, the structure of the reporting exception to liability in Article 171 illustrates that the initial payment of a bribe was certainly not lawful.[26] The ACC relieves the payer of a bribe from criminal liability if the bribe is properly reported not because such an action retroactively erases the stain

---

[25] The FCPA focuses on payments, not payers, throughout its structure. For example, it provides that there is no liability for "any facilitating or expediting payment to a foreign official . . . the purpose of which is to expedite or to secure the performance of a routine governmental action by a foreign official . . . ." 15 U.S.C. § 78dd-2(b). The purpose of this subsection was to "acknowledge[] . . . that some payments that would be unethical or even illegal within the United States might not be perceived similarly in foreign countries, and those payments should not be criminalized." *United States v. Castle*, 925 F.2d 831, 834 (5th Cir. 1991).

[26] *See* Butler Decl. ¶ 46.

8

of criminality, but because the state has a strong interest in prosecuting the government official who received the bribe. By waiving liability for reporting payers, the state increases the likelihood that it will learn of the bribery.

But at the moment that an individual pays a bribe, the individual has violated Article 171. At that time, the payment was clearly not "lawful under the written laws" of Azerbaijan.[27] If the individual later reports the bribe, she can no longer be prosecuted for that payment. But it is inaccurate to suggest that the payment itself suddenly became "lawful" – on the contrary, the *payment* was unlawful, though the *payer* is relieved of responsibility for it.[28] This is why the Resolution provides that the payer cannot receive restitution. Further, if the *payment* were retroactively lawful, the official who received the payment could not be prosecuted for receiving it. This cannot be correct because the purpose of the reporting exception is to enable the government to pursue the official. Thus,

---

[27] In this sense, the relief from liability operates in a fashion similar to that of a statute of limitations in the United States. If an individual commits a crime but that individual is not prosecuted within the statute of limitations, the individual's actions do not become "lawful" – rather, the criminal cannot be prosecuted.

[28] *Cf.* Tr. at 37 (testimony of Stephan) ("It's my understanding that the term relief from criminal responsibility means that the criminal code no longer applies to this person . . . .").

the relief from liability in Article 171 operates to excuse the payer, not the payment.

## B. The Extortion Exception

The exception for extortion contained in the same sentence must operate in the same manner.[29] A payment to an Azeri official that is made under threat to the payer's legal interests is still an illegal payment, though the payer cannot be prosecuted for the payment.[30]

This conclusion does not preclude Bourke from arguing that he cannot be guilty of violating the FCPA by making a payment to an official who extorted the payment because he lacked the requisite corrupt intent to make a bribe.[31] The legislative history of the FCPA makes clear that "true extortion

---

[29] While in the American system, it is generally accepted that a payment that was extorted was not a "bribe," the language of Article 171 clearly indicates that Azeri law considers extorted payments to be bribes. Otherwise, the phrase "[a] person who has given a bribe shall be free from criminal responsibility if with respect to him there was extortion of the bribe" would make no sense.

[30] *See* Tr. at 215-216 (testimony of Butler) ("Let's assume for a moment the worst forms of extortion. . . . So that I as the bribe giver, I will pay no matter what. . . . I am still guilty of giving the bribe because the code says I am. So now the question is whether having done so under these circumstances the court will convict me of bribery, and I think the answer is no, but it's going to have to be at the court level that that's determined, not before.").

[31] By the same token, an individual who is forced to make payment on threat of injury or death would not be liable under the FCPA. Federal criminal law

10

situations would not be covered by this provision."[32] Thus, while the FCPA would apply to a situation in which a "payment [is] demanded on the part of a government official as a price for gaining entry into a market or to obtain a contract," it would not apply to one in which payment is made to an official "to keep an oil rig from being dynamited," an example of "true extortion."[33] The reason is that in the former situation, the bribe payer cannot argue that he lacked the intent to bribe the official because he made the "conscious decision" to pay the official.[34] In other words, in the first example, the payer could have turned his back and walked away – in the latter example, he could not.

If Bourke provides an evidentiary foundation for the claim that he was the victim of "true extortion," I will instruct the jury on what constitutes a

---

provides that actions taken under duress do not ordinarily constitute crimes. *See generally United States v. Gonzalez*, 407 F.3d 118, 122 (2d Cir. 2005) ("Three discrete elements must be met to establish coercion or duress. These are: (1) a threat of force directed at the time of the defendant's conduct; (2) a threat sufficient to induce a well-founded fear of impending death or serious bodily injury; and (3) a lack of a reasonable opportunity to escape harm other than by engaging in the illegal activity.") (citing *United States v. Podlog*, 35 F.3d 699, 704 (2d Cir. 1994)). If a payment was obtained under duress, no liability attaches under the FCPA.

[32] *See* S.Rep. No. 95-114, at 10-11 (1977), *reprinted in* 1977 U.S.C.C.A.N. 4098, 4108.

[33] *Id.*

[34] *Id.* at 10.

11

situation of "true extortion" such that Bourke would not be found to have possessed the "corrupt" intent required for a violation under the FCPA. In any event, the jury will be instructed regarding the "corrupt" intent that the Government must prove he possessed beyond a reasonable doubt he possessed.[35] Such instruction will define "corrupt" intent as "having an improper motive or purpose" and will explain that the payment must have been intended to "induce the recipient to misuse his official position" in discharging an official act.[36] The charge will also emphasize that the proper focus is on Bourke's intent and that the Government is not required to show that "the official accepted the bribe," that the "official [] had the power or authority to perform the act [] sought" or that the "defendant intended to influence an official act which was lawful."[37]

---

[35] *See United States v. Alfisi*, 308 F.3d 144, 150 n.1 (2d Cir. 2002) (citing *United States v. Kahn*, 472 F.2d 272, 279 (2d Cir. 1973) (finding that the issue of extortion or "economic coercion" is addressed by instructing the jury on the requisite intent of bribery).

[36] S.Rep. No. 95-114, at 10 (defining the word "corruptly" for purposes of the FCPA).

[37] 1 L. Sand, et. al., *Modern Federal Jury Instructions - Criminal* ¶ 16.01, instr. 16-6 (2008).

## V. CONCLUSION

For the reasons stated above, the Court will not instruct the jury on the exceptions to criminal liability in Article 171. However, if Bourke provides an evidentiary foundation for "true extortion," the Court will instruct the jury on what constitutes a "true extortion" situation such that Bourke would not be found to possess the "corrupt" intent required for a violation under the FCPA.[38] The Court will, in any case, instruct the jury on the requisite elements of the crime of bribery under the FCPA, including the element of "corrupt" intent.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
October 21, 2008

---

[38] If Bourke demonstrates an evidentiary foundation for an affirmative defense of duress, the Court will also instruct the jury on its elements. *See Gonzalez*, 407 F.3d at 122 ("A defendant is entitled to an instruction on an affirmative defense only if the defense has 'a foundation in the evidence'") (quoting *Podlog*, 35 F.3d at 704).

13

## - Appearances -

**For the Government:**

Harry Chernoff
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2481

**For Defendant Bourke:**

Dan K. Webb, Esq.
James David Reich, Jr., Esq.
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5856