UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--+------------------------------------------------X

UNITED STATES OF AMERICA

   - against -

VICTOR KOZENY,

              Defendant.

--+------------------------------------------------X

**OPINION AND ORDER**

**05 CR 518 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

      Landlocked Shipping Company ("Landlocked") and Dr. Jitka Chvatik (collectively, the "Petitioners") filed a petition[1] seeking immediate termination of a restraining order issued on February 13, 2009.[2] Alternatively, Petitioners request that the Restraining Order be terminated if and when the Privy Council denies the Government's appeal for the extradition of defendant Victor Kozeny.[3] If Kozeny is extradited from the Bahamas, Petitioners request that a pre-trial hearing be held

---

[1]    *See* Petition of Landlocked Shipping Company and Dr. Jitka Chvatik for Termination of Post-Indictment Restraining Order and Return of Restrained Funds or, Alternatively, for an Immediate Hearing to Adjudicate Petitioners' Ownership of the Restrained Funds (the "Petition").

[2]    *See* Post-Indictment Restraining Order Pursuant to 18 U.S.C. § 982(a)(1) (the "Restraining Order").

[3]    *See infra* Part I.A.

1

shortly thereafter to determine Petitioners' ownership of certain funds.[4]  The

Government opposes the Petition on the ground that Petitioners are statutorily

barred from intervening in the criminal case against Kozeny.  For the following

reasons, the Petition is denied without prejudice.

I.     BACKGROUND

    A.     **The Indictment**

        On May 12, 2005, a grand jury returned a twenty-seven count sealed

indictment against Kozeny (the "Indictment"), which charged him with: conspiracy

to violate the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-1 *et seq.*

(Count One); violating the FCPA (Counts Two through Thirteen); violating the

Travel Act, 18 U.S.C. § 1952 (Counts Fourteen through Seventeen and Nineteen

through Twenty); conspiracy to commit money laundering (Count Twenty-One);

and money laundering (Counts Twenty-Two through Twenty-Five).[5]  The

Indictment also contains a forfeiture allegation in connection with property

involved in or traceable to the money laundering offenses, pursuant to 18 U.S.C.

---

[4]     The funds in dispute are the proceeds from the sale of a residence known as Peak House, located at 2137 Red Mountain, Aspen, Colorado.

[5]     Kozeny was not charged in Counts Eighteen, Twenty-Six or Twenty-Seven of the Indictment. For further details regarding the criminal charges and proceedings against Kozeny, *see generally U.S. v. Kozeny*, 664 F. Supp. 2d 369 (S.D.N.Y. 2009) and *U.S. v. Kozeny*, 638 F. Supp. 2d 348 (S.D.N.Y. 2009).

§ 982, which seeks forfeiture of Kozeny's interest in any and all right, title, and interest in the proceeds of the sale of Peak House, its appurtenances, and certain personalty and furnishings located therein (the "Peak House Funds").[6]

At the time the Indictment was filed, Kozeny was residing in the Bahamas where he has been living since September 2000. The Government therefore attempted to extradite Kozeny to the United States. A provisional warrant was issued for Kozeny's arrest and he was taken into custody by the Bahamian authorities on October 5, 2005. The Indictment was then unsealed. Kozeny was held in custody at a prison in the Bahamas while he resisted extradition. In September 2006, the presiding Magistrate in the Bahamas granted the Government's request for extradition. Kozeny challenged the Magistrate's decision which was reversed, in October 2007, by an Order of the Supreme Court of the Bahamas. Kozeny was then released from custody. The Order of the Supreme Court was affirmed by the Court of Appeal of the Bahamas. The Government then sought leave to appeal to the Privy Council in the United Kingdom, which is the court of last resort for appeals in the Bahamas. On December 17, 2010, special leave to appeal was granted by the Privy Council.[7]

---

[6]     *See* Indictment ¶ 83(a)(v).

[7]     Judicial Report of the Privy Council, Ex. 1 to the Government's Memorandum of Law in Opposition to the Petition of Landlocked Shipping

### B.    Peak House Funds

In 2000, certain investors in Kozeny's Azeri privatization program brought a federal civil suit against, *inter alia*, Kozeny and Landlocked, presided over by the Honorable Lewis T. Babcock (the "Colorado Litigation").[8]  The plaintiffs in the Colorado Litigation obtained a preliminary injunction that prohibited the sale, disposition, and/or transfer of ownership of Peak House.[9]  Judge Babcock made a series of factual findings establishing Kozeny's "use and control over Peak House."[10]  Judge Babcock found that "although title to Peak House is held in the name of Landlocked, there is substantial evidence that Kozeny is the beneficial owner."[11]  Judge Babcock further stated:

> Reasonable inferences from the undisputed evidence demonstrate that 1) Kozeny was the principal decision maker of the [COCCA] enterprise and gave directions to the members of the enterprise which were followed by them; 2) Landlocked held title to the Aspen property to conceal Kozeny's interest in it and to conceal the proceeds of the fraud; and 3) Peak House Corp. managed the Aspen

Company and Dr. Jitka Chvatik ("Gov't Mem.").

[8]      *See National Union Fire Ins. Co. of Pittsburgh, PA.* v. *Kozeny*, 115 F. Supp. 2d 1210 (D. Colo. 2000).

[9]      *See id.* at 1212, 1231 (granting a preliminary injunction pursuant to the Colorado Organized Crime Control Act ("COCCA")).

[10]      *Id.* at 1223.

[11]      *Id.* at 1228 (citation omitted).

4

> property and was used to conceal funds obtained by fraud
> that were used to pay for construction and maintenance of
> the Aspen property.[12]

On November 2, 2001, Judge Babcock authorized the sale of Peak House for approximately $22 million. The net proceeds from the sale of Peak House were deposited in accounts held in Landlocked's name at Wells Fargo Bank, N.A. The parties settled the Colorado Litigation in March 2009. At that time, Judge Babcock notified the Government that the Peak House Funds would be released from restraint within thirty days. On April 6, 2009, less than thirty days later, the Government filed a civil forfeiture action in this district.[13]

### C.   The Restraining Order

On February 11, 2009, in anticipation of the settlement of the Colorado Litigation, the Government submitted an *ex parte* application to this Court for a post-indictment restraining order pursuant to 18 U.S.C. § 982(a)(1). On February 13, 2009, this Court granted the Government's application and issued the Restraining Order. The Restraining Order prevents the transfer, sale, assignment, pledge, hypothecation, encumbrance, disposal, or dissipation of the

---

[12]   *Id.* at 1229.

[13]   *See United States v. Any and All Funds on Deposit in Account No. 12671905, Held in The Name of Landlocked Shipping Company at Wells Fargo Brokerage Services, LLC, and All Interest and Other Proceeds Traceable Thereto,* No. 09 Civ. 3481, 2010 WL 3185688 (S.D.N.Y. Aug 10, 2010).

Peak House Funds in order to preserve them for forfeiture in the criminal case against Kozeny.

### D.   The Civil Forfeiture Action

Because Kozeny remains a fugitive, it is uncertain whether forfeiture of the Peak House Funds will ever happen. Consequently, the Government filed an *in rem* civil forfeiture action against the Peak House Funds on April 6, 2009.[14] In its amended complaint (the "Complaint"), the Government alleges that the Peak House Funds are subject to forfeiture as property involved in, or traceable to, money laundering offenses allegedly committed by Kozeny.[15]

On May 7, 2009, Petitioners (the "Claimants" in *Account No. 12671905*) filed a Verified Claim claiming ownership of the Peak House Funds.[16] Claimants also filed a motion for summary judgment, arguing that the civil forfeiture action was barred by the statute of limitations.[17] The Government cross-

---

[14]   *See id.* (hereafter "*Account No. 12671905*"). The case was assigned to the Honorable Harold Baer, Jr.

[15]   *See* Complaint ¶ 28.

[16]   *See* Verified Claim ¶ 8 ("The funds are the proceeds from Landlocked's sale of Peak House that are legally and beneficially owned by and rightfully belong to Claimants.").

[17]   The parties agreed that the applicable statute of limitations was the general customs law statute of limitations found at 19 U.S.C. § 1621 ("section 1621"). Section 1621 provides two windows in which to bring a forfeiture action:

moved for summary judgment, arguing that: (1) Claimants lacked Article III standing to contest the forfeiture; (2) the fugitive disentitlement doctrine barred Claimants from proceeding with their claim; and (3) the limitations period had been, or should be, tolled during the period of Kozeny's absence from the United States.

On August 10, 2010, Judge Harold Baer of this Court issued an Opinion and Order granting Claimants' motion for summary judgment on statute of limitations grounds.[18] In so doing, Judge Baer determined that "Claimants have offered sufficient evidence to demonstrate constitutional standing to challenge the forfeiture action."[19] Judge Baer also determined that the fugitive disentitlement

---

(1) within five years after the time when the alleged offense was discovered, or (2) within two years after the time when the involvement of the property in the alleged offense was discovered, whichever was later.

[18]    *See Account No. 12671905*, 2010 WL 3185688, at \*10 ("It is unfortunate that this action, which appears to have some merit and involves a substantial amount of funds, must be dismissed on procedural grounds, but there is no question that the Government learned of the Peak House funds at the very latest by 2005 and sat on its hands until 2009. As such, equitable tolling is unavailable to the Government and the action is time barred.").

[19]    *Id.* at \*6. *See also id.* at \*7 ("In the present case, Claimants provide sufficient facts to show that Dr. Chvatik purchased the home through a corporation set up in trust for her benefit, used the home, and will receive the funds from its sale should they not be forfeited. Taken together, this is sufficient to show a 'distinct and palpable injury' if the property is wrongly forfeited, and provide for constitutional standing.") (quoting *United States v. Cambio Exacto, S.A.*,166 F.3d 522, 527 (2d Cir. 1999) (further quotation marks and citation omitted)).

doctrine did not apply,[20] nor did statutory or equitable tolling.[21]  Judge Baer noted that "there is substantial evidence that Kozeny was involved in the purchase and use of Peak House . . . ."[22]  However, Judge Baer concluded that "[t]he ultimate question of Kozeny's relationship to Peak House is an open question."[23]

## II.   APPLICABLE LAW

Criminal forfeiture proceedings are governed by Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853 ("section 853").  Once a defendant is convicted of the offense(s) giving rise to a forfeiture allegation, either by trial or by plea, the court must enter a preliminary order of forfeiture.[24]  The court must enter the preliminary order of forfeiture "without regard to any third party's interest in the property."[25]  After entering the preliminary order of forfeiture, the court conducts an "ancillary proceeding" in order to determine the interests of a third

---

[20]     *See id.* at *8 (stating that "the doctrine is inapplicable because the fugitive in question, Kozeny, is neither a claimant nor the majority shareholder in Landlocked").

[21]     *See id.* at *9-10.

[22]     *Id.* at *6.

[23]     *Id.*

[24]     *See* Fed. R. Crim. P. 32.2(b)(2).

[25]     *Id.* 32.2(b)(2)(A).

party in property subject to forfeiture.[26]   It is well-settled that the ancillary proceeding, which begins *after* the entry of a preliminary order of forfeiture, is the exclusive forum in which a third party may assert an interest in property subject to forfeiture.[27]

It is also well-settled that a third party is prohibited from intervening in a criminal case to assert an interest in property subject to forfeiture prior to the court's entry of a preliminary order of forfeiture.[28]   Section 853(k), entitled "Bar on intervention," explicitly provides:

---

[26]      *See* 21 U.S.C. § 853(n).

[27]      *See DSI Assocs. LLC* v. *United States*, 496 F.3d 175, 183 (2d Cir. 2007) ("It is . . . well settled that section 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets – after the preliminary forfeiture order has been entered."); *De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006) ("An ancillary proceeding is evidently the *only* avenue for a post-indictment third-party claim to forfeited property, because the statutory scheme bars commencement of 'an action at law or equity against the United States concerning the validity of [a third party's] alleged interest in the property . . . subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.'") (quoting 21 U.S.C. § 853(k)) (alterations and emphasis in original); *United States* v. *Egan*, No. 10 CR 191, 2010 WL 3258085, at *2 (S.D.N.Y. Aug. 16, 2010) (recognizing that "[t]he Court of Appeals has made clear that the exclusive avenue available to third parties wishing to assert their interest in property charged to be forfeitable is an 'ancillary proceeding' as set forth in § 853(n)").

[28]      *See DSI Assocs. LLC*, 496 F.3d at 183 ("It is well established that third parties may not intervene during criminal forfeiture proceedings to assert their interests in the property being forfeited.") (citing 21 U.S.C. § 853(k) and *United States* v. *McHan*, 345 F.3d 262, 269 (4th Cir. 2003)).

9

> Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may —
>
> > (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
> >
> > (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.[29]

Thus, a third party does not have standing to intervene in a criminal case, except to the extent of filing a third-party petition pursuant to section 853(n).  Furthermore, once the defendant has been indicted and notice of forfeiture given, a third party may not challenge the forfeiture, or otherwise assert an interest in property subject to forfeiture, in any other forum.  Likewise, Rule 32.2(b)(2) provides that "[d]etermining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)."[30]

## III.  DISCUSSION

### A.   Judge Baer's Opinion and Order

Petitioners argue that Judge Baer's findings in *Account No. 12671905*

---

[29]     21 U.S.C. § 853(k).

[30]     Fed. R. Crim. P. 32.2(b)(2)(A).

10

provide an independent basis for this Court to terminate the Restraining Order immediately. However, in that case, Judge Baer did not hold that Petitioners are the rightful owners of the Peak House Funds. Rather, Judge Baer merely decided the threshold question of whether Petitioners/Claimants had constitutional standing to challenge the forfeiture of the Peak House Funds.[31] As noted by Judge Baer, the question before him was simply "one of standing [where] 'the claimant need not prove the full merits of [her] underlying claim . . . .'"[32] Without deciding the ultimate question of ownership of the Peak House Funds, Judge Baer dismissed the civil forfeiture action as time barred.[33] Because ownership of the Peak House

---

[31]     "Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Cambio Exacto, S.A.*, 166 F.3d at 526.

[32]     *Account No. 12671905*, 2010 WL 3185688, at *6 (quoting *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002) (second alteration in original)).

[33]     *See id.* at *8. Judge Baer based his ruling on the fact that the Indictment against Kozeny was filed on May 12, 2005, almost four years before the civil forfeiture action was filed on April 6, 2009. "On its face, this would appear to render the present action time barred, since it was filed almost four years after the latest date in which Peak House was 'discovered' to be involved in the alleged offense." *Id.* Judge Baer apparently overlooked the first window – the five-year statute of limitations – provided for in section 1621. *See United States v. 5443 Suffield Terrace, Skokie, Illinois*, 607 F.3d 504, 507 (7th Cir. 2010) (stating that the Government had "two windows" within which to file its civil forfeiture action under section 1621). *See also id.* at 508 n.1 ("Prior to 2000, § 1621 included only the five year statute of limitations; Congress added the additional two-year limitation when it passed the Civil Asset Forfeiture Reform Act of 2000

Funds was not actually litigated and decided, the Government is not collaterally estopped from subsequently seeking forfeiture of the Peak House Funds.[34] Petitioners' argument to the contrary is therefore rejected.

## B.    Appeal to the Privy Council

Petitioners argue that the Restraining Order should be terminated, without any further proceedings, if the Government's appeal to the Privy Council is denied, the legal effect of which would permanently bar Kozeny's extradition to the United States.  Apparently, the Government agrees with Petitioners on this point, stating as follows: "If it is determined that Kozeny cannot be extradited to face the charges in the Indictment, the Restraining Order should be terminated at

---

(CAFRA).").  CAFRA amended section 1621by "*enlarging* the time in which the government may commence a civil forfeiture action . . . ."  *United States v. Twenty-Seven Parcels of Real Property Located in Sikeston, Scott County, Missouri*, 236 F.3d 438, 440 (8th Cir. 2001) (emphasis added).

[34]     "[I]ssue preclusion, also known as collateral estoppel, bars a plaintiff from relitigating an issue that has already been fully and fairly litigated in a prior proceeding." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (citing *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003)).  Issue preclusion apples when "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Purdy*, 337 F.3d at 253).

12

that time."[35] Thus, barring any procedural requirements to termination, the Restraining Order will be automatically terminated if the Privy Council decides against the Government and affirms the Bahamian courts' rulings against extradition.

## C.    Due Process Concerns

Finally, Petitioners argue that upon Kozeny's extradition, the Due Process Clause of the Fifth Amendment requires that an immediate hearing be held to adjudicate ownership of the Peak House Funds. The only controlling authority cited by Petitioners for this proposition is *United States v. Regan*,[36] a Racketeer Influenced and Corrupt Organizations Act ("RICO") case. In *Regan*, five of the six defendants held interests in the Princeton/Newport Group, a consortium of numerous investment companies owned or controlled by Princeton/Newport Partners, L.P.[37] "Because the defendants' interests in the Princeton/Newport Group [were] forfeitable upon conviction, the Princeton/Newport Group [was] a third party in possession of potentially forfeitable property."[38] At the

---

[35]     Gov't Mem. at 13.

[36]     858 F.2d 115 (2d Cir. 1988).

[37]     *See id.* at 117. The Princeton/Newport Group was not a defendant in the RICO action. *See id.*

[38]     *Id.*

13

Government's request, the district court issued an order, pursuant to 18 U.S.C. §
1963(d)(1)(A) ("section 1963(d)"), "directed at the Princeton/Newport Group
restraining the use of its assets."[39]  On appeal, appellants challenged the restraint
on the Princeton/Newport Group, arguing that section 1963(d)(1)(A) does not
authorize a restraining order that restrains the property interest of an unindicted
third party.[40]

      The Second Circuit disagreed.[41]  The court held that the purpose of
section 1963(d), which is to preserve the status quo, "cannot be achieved if courts
graft onto the statute a wholesale bar to restraints on third parties."[42]  Nonetheless,
the court stated that "orders directed at third parties are strong medicine and should
not be used where measures that are adequate and less burdensome on the third
parties are available."[43]

> We believe, therefore, that where the nature of the
> defendants' forfeitable property makes the imposition of a
> restraining order burdensome on third parties, the district

---

[39]   *Id.* at 118.

[40]   *See id.* at 119.

[41]   *See id.* ("The language of the provision in no way limits restraining
orders to indicted persons where restraints on the defendants are insufficient to
preserve potentially forfeitable property.").

[42]   *Id.* at 120.

[43]   *Id.* at 121.

14

court should, as an alternative, restrain assets of the
defendant equal in value to that of the unrestrained
forfeitable property.

We are unsure as to the reasonable value of the forfeitable
property – the defendants' interests in the
Princeton/Newport Group plus their proceeds from the
illegal activity – and the value of the non-partnership
properties of the individual defendants that have been
restrained. If the value of the restrained non-partnership
property of a defendant exceeds the value of all potentially
forfeitable property of that defendant, no restraint on the
assets of the Princeton/Newport Group can be justified so
far as that defendant's partnership interest is concerned. To
the extent that the value of a defendant's restrained
nonpartnership properties exceeds that of the proceeds he
received, but not that of all his potentially forfeitable
property, the need to restrain assets of the
Princeton/Newport Group exists but *it should have an
opportunity to post a bond* for the excess.[44]

Thus, *Regan* does not support the proposition that due process mandates an
immediate hearing under the circumstances presented by Petitioners.[45]  In fact, the
words "due process" are nowhere mentioned in the *Regan* decision.  The other
cases cited by Petitioners in this regard are not controlling and this Court declines
to follow them.  Accordingly, Petitioners' request for an immediate hearing upon
Kozeny's extradition, if and when it happens, is denied.

---

[44]      *Id.* at 121 (emphasis added).

[45]      Moreover, *Regan* is distinguishable on the ground that the restraining
order was issued under a RICO statute.

15

## IV.    CONCLUSION

For the reasons stated above, the Petition denied without prejudice. Petitioners may renew their Petition if and when the request to extradite Kozeny is denied by the Privy Council. The Restraining Order will remain in effect until further notice from this Court. The Clerk of the Court is directed to note that the Petition has been decided.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 28, 2011

16

**- Appearances -**

**For Petitioners:**

James E. Nesland, Esq.
Law Offices of James E. Nesland, LLC
14252 East Caley Avenue
Aurora, CO 80016
(303) 807-9449

**For the Government:**

Harry Chernoff
Amy Lester
Assistant United States Attorneys
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2481/2416