UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOC # 169

------------------------------------x

UNITED STATES OF AMERICA          :     AFFIDAVIT OF SPECIAL AGENT
                                         THOMAS D. ROSATO, JR.
          -v.-                    :     IN SUPPORT OF EX PARTE
                                         POST-INDICTMENT
VIKTOR KOZENY and                 :     RESTRAINING ORDER
FREDERIC BOURKE, JR.,                    PURSUANT TO 18 U.S.C.
                                  :     § 982(a)(1)

          Defendants.            :

                                         05 Cr. 518 (SAS)
------------------------------------x

STATE OF NEW YORK         )
COUNTY OF NEW YORK        ) ss.:
SOUTHERN DISTRICT OF NEW YORK )

       THOMAS D. ROSATO, JR., being duly sworn, deposes and says:

       1.    I am a Special Agent with the Federal Bureau of

Investigation ("FBI").  I have been a Special Agent with the FBI

for approximately eight years and have participated in numerous

investigations involving fraud, corruption, and money laundering.

I have been personally involved in the investigation discussed

herein.

       2.    I make this affidavit in support of the

application by the United States of America in support of an ex

parte post-indictment restraining order restraining VIKTOR KOZENY

(the "defendant"), from engaging in the transfer, sale,

assignment, pledge, hypothecation, encumbrance, dissipation or

movement of the following assets:

              Any and all right, title, and interest in the
              proceeds of the sale of the real property and
              appurtenances known as the Peak House, 2137
              Red Mountain, Aspen, Colorado, and various
              personalty and furnishings located at the

Peak House; to wit, approximately $23 million
in United States currency, held at Wells
Fargo (the "Peak House Funds").

3.    The information contained in this affirmation is
based, in part, upon personal knowledge arising from my
participation in this investigation, and, in part, upon
information and belief.  The sources of my information and belief
include, among other things: (a) statements made to me, and
information provided to me, by other law enforcement officers and
other entities and individuals; (b) my review of records and
various documents and records that have been obtained pursuant to
subpoena; (c) my debriefings of witnesses; and (d) my review of
business and account records pertaining to the Peak House Funds,
as more fully described below.  Where the statements of others or
the contents of documents and records are related herein, they
are related in substance and in part, and not verbatim.
Similarly, all assertions concerning dates and numbers are
approximate, based upon information and evidence gathered to
date.  Since this affirmation is submitted for the limited
purpose of obtaining a restraining order as to the Peak House
Funds, I have not set forth each and every fact that I know
concerning this investigation.

### THE INDICTMENT

4.    As set forth in the accompanying application, on
May 12, 2005, the defendant was indicted on charges involving,

2

among other things, money laundering.  See Indictment, 05 Cr. 518
(SAS), attached as Exhibit A to the Government's Application.
The defendant has not been arraigned on the charges in the
Indictment and is currently a fugitive.

     5.   The charges against the defendant stem from his
involvement in a conspiracy to bribe government officials in the
Republic of Azerbaijan ("Azerbaijan") to ensure that these
officials would privatize the State Oil Company of the Azerbaijan
Republic ("SOCAR") and allow the defendant and his co-conpirators
to share in the anticipated profits arising from that
privatization.

     6.   As set forth in greater detail in the Indictment,
the defendant controlled two companies, Oily Rock Ltd. ("Oily
Rock") and Minaret Ltd. ("Minaret"), which participated in a
privatization program in Azerbaijan.  Under that privatization
program, Azeri citizens could use free government-issued vouchers
to bid for shares of state-owned industries that were to be
privatized.  Privatization vouchers were bearer instruments that
were freely tradable, and they typically were bought and sold
using United States currency.  Foreigners could also participate
in Azerbaijan's privatization program and own vouchers, but only
if they purchased a government-issued "option" for each voucher
they held.

3

7.   As alleged in the Indictment, beginning in July 1997, the defendant directed others to purchase vouchers and options on behalf of Oily Rock and Minaret.  These vouchers and options were purchased using millions of dollars of cash that was flown into Azerbaijan on the defendant's private jet and on planes he chartered.

8.   Various individuals and institutions invested together with the defendant in privatization vouchers and options.  In fact, the investigation of this matter has revealed that the defendant and his co-conspirators often met with and recruited representatives of various institutional investors for the purpose of soliciting additional investment in Oily Rock and Minaret as part of the Azeri privatization scheme.  As set forth below, some of those meetings occurred at the Peak House.

<u>THE PEAK HOUSE</u>

9.   The defendant is the former beneficial owner of the Peak House.  The title to the Peak House was held in the name of Turnstar Limited ("Turnstar"), which is a foreign corporation organized under the laws of the Bahamas, with its principal place of business in Nassau, Bahamas.  In a civil action brought by various institutional plaintiffs against Turnstar in the United States District Court for the District of Colorado based on alleged fraudulent conduct and breaches of fiduciary duty (the "Colorado Action"), the court found that Turnstar was a shell

4

corporation under the defendant's control. <u>See</u> <u>National Union</u>
<u>Fire Ins. Co.</u> v. <u>Kozeny</u>, 115 F. Supp. 2d 1231, 1236 (D. Colo.
2000) (finding personal jurisdiction over Turnstar in Colorado).

　　　　10.　During the course of the investigation of the
defendant, I have learned that the defendant expended millions of
dollars from the proceeds of the Azeri privatization scheme on
renovations to and/or upkeep of the Peak House.  Similarly, in
the Colorado Action, the court found that the proceeds of the
Azeri fraud scheme were diverted to Turnstar's accounts and used
to purchase furnishings which were delivered to the Peak House.
<u>Id.</u>  The court noted that the record before it reflected over
$9.7 million in wire transfers from Swiss bank accounts held by
Minaret to companies that were working on or connected to the
Peak House, including a wire transfer to Turnstar on or about
April 28, 1998 in the amount of $790,000.  <u>See id.</u> at 1238.

　　　　11.　The court in the Colorado Action also found that
the Peak House's "lavish furnishings were an essential and
integral part of Kozeny's method to recruit investors in the
Azeri fraud by impressing them with his material wealth," <u>id.</u> at
1236, and the investigation has shown that, in or about December
1997, the defendant expended approximately $1.5 to $2 million on
a holiday party at the Peak House for the purpose of recruiting
investors in the Azeri privatization scheme.  <u>See id.</u> (noting

that in addition to the December 1997 party, many of the follow-up meetings occurred at Peak House).

CONCLUSION

12. Given that the defendant is currently a fugitive and based on the prior experience of the Federal Bureau of Investigation, there is reason to believe that provision of notice to the defendant prior to the entry of a restraining order will jeopardize the availability of the assets in question for forfeiture. Accordingly, the accompanying application is being submitted ex parte.

THOMAS D. ROSATO, JR.
Special Agent
Federal Bureau of Investigation

Sworn to before me this
11th day of February, 2009:

Notary Public

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires May 8, 2010

6