UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,          :

vs.

VIKTOR KOZENY and FREDERIC         :       05 CR 518 (SAS)
BOURKE, JR.,                       :

     *Defendants.*
                                   :
_____


**NOTICE OF MOTION TO INTERVENE BY
HARVARDSKÝ PRŮMYSLOVÝ HOLDING, A.S.**

**PLEASE TAKE NOTICE** that, filed concurrently with this Notice, is Harvardský průmyslový holding, a.s. – v likvidaci's ("Harvard Holdings") Motion to Intervene in the above-captioned case, as well as accompanying exhibits.

1

**WHEREFORE** for the reasons set forth in the Motion to Intervene, Putative Intervenor Harvard Holdings requests that this Court issue an Order permitting Harvard Holdings to intervene in the above-captioned proceeding.

        Respectfully submitted,

        _____/s/_____

        Michael D. Nolan
        Edward G. Baldwin
        Milbank, Tweed, Hadley & McCloy LLP
        1850 K Street, N.W., Suite 1100
        Washington, D.C.  20006
        Telephone:  (202) 835-7524
        Fax:  (202) 263-7508
        mnolan@milbank.com

        Sander Bak
        Milbank, Tweed, Hadley & McCloy LLP
        1 Chase Manhattan Plaza
        New York, NY 10005
        Telephone:  (212) 530-5125

        *Attorneys for*
        *Harvardský Průmyslový Holding, A.S.*

Dated:  May 25, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,           :

vs.

VIKTOR KOZENY and FREDERIC          :           05 CR 518 (SAS)
BOURKE, JR.,                        :

       *Defendants.*
                                              :

───────────────────────────────

**MOTION TO INTERVENE BY
HARVARDSKÝ PRŮMYSLOVÝ HOLDING, A.S.**

       Pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P. 24" or "Rule 24"), Harvardský průmyslový holding, a.s. – v likvidaci ("Harvard Holdings") hereby files this motion to intervene in the above-captioned proceeding (the "Motion") and in support hereof, states the following:

## I.
## BACKGROUND

*Kožený's Fraud Against Harvard Holdings*

       Harvard Holdings is a Czech entity established in 1991 by Viktor Kožený so that he could take advantage of the Czech privatization program of the 1990s.[1] In connection with the privatization, the Czech Republic issued vouchers for US$35 that its citizens could exchange for shares of privatized Czech companies.[2] Using a Western-style media campaign, Kožený convinced approximately one million Czech citizens to deposit their vouchers with him,

---

[1] *See Czech Republic v. Viktor Kožený and Ing. Boris Vostry*, 46T 17/2006 (July 9, 2010), p. 36 ("[Harvard Holdings], as a joint-stock company, was represented by the Board of Directors chaired from the beginning by defendant Kozeny.") [hereinafter Czech Judgment], attached hereto as Exhibit A.

[2] David Glovin, *Pirate of Prague Invokes Napolean, Mandela as He Denies Fraud*, Bloomberg News (Oct. 1, 2008), http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aYo5XHTxYDT0 [hereinafter Pirate of Prague], attached hereto as Exhibit B.

1

purportedly so that he could invest on their behalf.[3] Kožený's funds amassed enough vouchers to control more than 15 percent of the Prague stock market.[4] The market value of Kožený's funds reached more than $1.4 billion in December 1994, more than 30 times the original value of the vouchers he had collected.[5] Shortly thereafter, Kožený and the director of Harvard Holdings, Boris Vostrý, stripped the Harvard funds of their assets by selling them at steep discounts to offshore vehicles they controlled.[6] Hundreds of thousands of Czech investors were left with nothing.[7]

On July 9, 2010, Kožený was found guilty together with his co-conspirator Vostrý in the Czech Republic (the "Czech Judgment") on charges of embezzling $1.1 billion from mutual funds they established in the early 1990s.[8] The judgment awarded Harvard Holdings (and ultimately its defrauded investors) 8,289,933,074.05 Czech Korunas ("CZK"), or approximately US$410 million, plus interest in statutory rate since February 2008 until full payment, against Kožený.[9] The Prague court also sentenced each of Kožený and Vostrý to 10 years in prison.[10] Kožený, however, has sought to evade the Czech judgment.[11]

*Kožený's Purchase, Control and Use of The Peak House*

This court is already familiar with the facts surrounding the beneficial ownership of the "Peak House", as well as related issues, so Harvard Holdings does not recite the bulk of these facts here, except as set forth below.[12]

---

[3]   *See* Pirate of Prague, attached hereto as Exhibit B ("Using a Western-style media campaign, Kozeny convinced a million Czechs to deposit their vouchers with him so he could invest on their behalf").

[4]   *See* Pirate of Prague, attached hereto as Exhibit B.

[5]   *See* Pirate of Prague, attached hereto as Exhibit B.

[6]   *See* Pirate of Prague, attached hereto as Exhibit B.

[7]   *See* Pirate of Prague, attached hereto as Exhibit B.

[8]   *See* Czech Judgment, attached hereto as Exhibit A, at 28-29.

[9]   *See* Czech Judgment, attached hereto as Exhibit A, at 28-29.

[10]  *Id*.

[11]  *See* Czech Judgment, attached hereto as Exhibit A, at 30 ("As the non-cooperation of the Bahamian and Belizean judicial authorities was attributable to the defendants' initiative, the [Czech] authorities involved in the preparatory proceedings arrived at the conclusion that the defendants avoided criminal prosecution by staying abroad").

[12]  *See, e.g.*, Government's Memorandum of Law in Opposition to the Petition of Landlocked Shipping Company and Dr. Jitka Chvatik, Docket No. 276, filed February 4, 2011.

Peak House was purchased for cash in June 1997.[13] Kožený had received the bulk of the money from his fraud against Harvard Holdings in 1994-1995.[14] Kožený had reportedly transferred the funds during this same time frame from the Harvard Holdings fraud into offshore accounts to prevent Czech authorities from recovering this money.[15] Harvard Holdings has a good faith belief that Kožený purchased the Peak House with his illicit gains from his fraud against Harvard Holdings.

In a proceeding in the Federal District Court in Colorado, Judge Babcock found that Kožený had control over and use of Peak House.[16] Judge Babcock further set out the following undisputed facts:[17]

- Kožený gave a security interest in the Aspen property to secure the lease on his Beech King Air airplane;

- With respect to the purchase of Peak House, Kožený: a) toured the Aspen home several times with a realtor before it was sold; b) told the realtor he was buying the Aspen property; c) made a purchase offer for the Aspen property through his broker; and d) celebrated the purchase at the Aspen home the night the offer was accepted;

- Paul Field, the prior owner of the Aspen property confirmed that Kožený purchased it;

- Kožený personally ordered and supervised millions of dollars of reconstruction and design work at Peak House including: a) an exercise room given to his wife as a Christmas present; b) a playroom for his children; c) a suite for his female companion; d) a cigar room dug out of the mountainside; e) construction of secret hiding places; and f) paint colors and shades personally selected and approved by him;

---

[13] *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA., et al. v. Kozeny, et al.*, 115 F. Supp. 2d 1210, 1223-24 (D. Colo. 2000) [hereinafter *National Union Fire*].

[14] *See* Pirate of Prague, attached hereto as Exhibit B.

[15] *See* Czech Judgment, attached hereto as Exhibit A, at 2.

[16] *National Union Fire*, at 1223.

[17] For a full list of the factual findings made by Judge Babcock in Colorado, *see* National Union Fire, at 1223. *See also U.S. v. Kozeny and Bourke*, 05 Cr. 518 (SAS), Affidavit of Special Agent Thomas D. Rosata, Jr. In Support Of Ex Parte Post-Indictment Restraining Order Pursuant to 18 U.S.C. § 982(a)(1), attached hereto as Exhibit C, at ¶ 8 ("[Kozeny] is the former beneficial owner of the Peak House"); *U.S. v. Kozeny and Bourke*, 05 Cr. 518 (SAS), Government Application Of Ex Parte Post-Indictment Restraining Order Pursuant to 18 U.S.C. § 982(a)(1), ¶¶ 16-17.

3

- Accounting records from Minaret reflect entries designated "VK" [Viktor Kožený] for millions of dollars in payments made to "Peak House Corp.," the "Aspen House Account," and "Christensen Design Group";

- Kožený's December 1997 party at the Aspen home was featured in several news articles reporting Kožený as the owner of that property; and

- One of myriad liens filed against the Aspen property names Kožený as the obligor and describes him as the resident owner of the Aspen property.

To the knowledge of Harvard Holdings, neither Kožený nor any other person or entity has submitted any evidence to contradict the information above. Moreover, to the knowledge of Harvard Holdings, neither Kožený nor any other person or entity has submitted any documentary evidence showing the source of the funds that were used to purchase the Peak House.

*Kožený's Efforts to Hide Illicit Gains and Hide from Justice*

Kožený defrauded his investors in the Czech Republic of more than US$1.1 billion (CZK 16 billion).[18] Kožený is alleged to have defrauded investors in the Azeri fraud of more than US$174 million.[19] Yet Kožený incredulously asserts this his assets are now depleted.[20] Kožený also asserts that his family has depleted its assets as well. These assertions are laughable given the amount of money Kožený took from his investors, not to mention that he continues to pay a battery of lawyers and maintain a high standard of living in the Bahamas.

Kožený is reported to have bought hundreds of shell companies, with prepackaged bylaws and nominal boards of directors, in off-shore locations with secrecy rules that prevent the disclosure of owners.[21] It has been reported that everything Kožený owns was put in the name of private companies.[22]

Moreover, Kožený has taken every effort to avoid clearing his name in both criminal actions in the United States and the Czech Republic. The court is already aware of

---

[18] *See* Pirate of Prague, attached hereto as Exhibit B; *see also* Czech Judgment, attached hereto as Exhibit A, at 28-29.

[19] *See U.S. v. Victor Kozeny et al.*, Indictment, 05 Cr. 518 (June 12, 2005), ¶ 83(a).

[20] *See* Pirate of Prague, attached hereto as Exhibit B.

[21] *See* Pirate of Prague, attached hereto as Exhibit B; *see also National Union Fire*, *supra* note 13, at 1215.

[22] *See* Pirate of Prague, attached hereto as Exhibit B.

4

Kožený's efforts to avoid facing the charges in the United States. Kožený has also refused to come to the Czech Republic and had to prosecuted as a fugitive.[23]

***Complaint filed with Supreme Court of the State of New York to Enforce Czech Judgment***

On May 25, 2012, Harvard Holdings filed a complaint in the Supreme Court of the State of New York to enforce the Czech Judgment against Kožený and Landlocked Shipping Company.

## II.
## MOTION TO INTERVENE

Harvard Holdings has a right to intervene in this case pursuant to Rule 24(a) as it has an interest relating to the property that is the subject of this action and the Court's ruling on the Restraining Order will impede Harvard Holdings's ability to protect its interest. Alternatively, Harvard Holdings requests that the Court grant it permissive intervention under Rule 24(b).

*Intervention of Right*

Under Rule 24(a), a putative intervenor of right must establish four criteria: "the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties."[24] For a party to intervene in a case as of right under Rule 24(a)(2), that party must have an interest in the case that is "'direct, substantial, and legally protectable.'"[25] Harvard Holdings satisfies these criteria.

First, Harvard Holdings's motion is timely. Petitioners Landlocked Shipping Company and Dr. Jitka Chvatík filed their renewed petition to terminate the Restraining Order on April 9, 2012. The Government's response to that petition is due on May 25, 2012, with the

---

[23]    *See* Czech Judgment, attached hereto as Exhibit A, at 28-29.

[24]    *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).

[25]    *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)).

Petitioner's Reply due on June 11, 2012. Thus, there is no prejudice to the parties in the action in terms of delay.

Second, Harvard Holdings has a substantial interest in the funds from Peak House. The Peak House was purchased with cash in 1997, just a few years after Kožený transferred hundreds of millions of dollars from Harvard Holdings to his offshore entities.[26] The undisputed findings of fact from Judge Babcock show that Kožený used and controlled the Peak House.[27] To the knowledge of Harvard Holdings, neither Kožený or Landlocked or Dr. Jitka Chvatík has provided documents to show the source of the funds that were used to purchase the Peak House in cash. Even if Kožený used funds other than his illicit gains from the Czech fraud to purchase Peak House, Harvard Holdings still has an interest in these funds as Kožený's illicit gains allowed him to purchase the Peak House.

Third, the interest of Harvard Holdings interest in the funds of the Peak House will be impaired if it cannot intervene to protect its interest in the Peak House funds. Kožený has used shell companies to hide assets and prevent potential creditors from being able to satisfy their judgments.[28] The assertion that Kožený has no interest in Peak House is yet another attempt to shield assets from creditors.  Kožený has also shown that he is unwilling to appear and defend himself against the criminal charges. If this restraining order is lifted, Kožený will cause Landlocked to transfer the funds so that any judgment against him will remain unsatisfied.[29]

Fourth, the U.S. government cannot adequately protect Harvard Holdings's interest. Harvard Holdings's interest in the Peak House funds arising from the judgment relating to Kožený's fraudulent activities in the Czech Republic. The U.S. government action is predicated on the indictment issued in the instant case. If the government is unable to prosecute Kožený due to his continued failure to appear, or for some other reasons decides it will not pursue the continuation of the restraining order, there is the possibility that the funds from the Peak House will be released.

---

[26]   *See National Union Fire*, *supra* note 13, at 1224.

[27]   *See National Union Fire*, *supra* note 13, at 1224-25.

[28]   *See National Union Fire*, *supra* note 13, at 1215; *see also* Czech Judgment, attached hereto as Exhibit A, at 50, 98.

[29]   *See, e.g., U.S. v Kozeny and Bourke*, 05 Cr. 518 (SAS), Post-Indictment Restraining Order Pursuant to 18 U.S.C. § 982(a)(1), Feb. 13, 2009.

6

Therefore, Harvard Holdings should be allowed to intervene in the instant case to protect its interest in the funds from the Peak House.

*Permissive Intervention*

The district court has broad discretion under Rule 24(b) to determine whether to permit intervention on the basis that the intervenor's "claim or defense and the main action have a question of law or fact in common."[30] In exercising this discretion, the Court should consider "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'"[31] "The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria."[32]

Several of the considerations that the Court undertakes, such as the interest of Harvard Holdings, are discussed above. There are also questions of law and fact that are common. The intervening petitioners, Landlocked Shipping and Dr. Chvatík, have asserted that Dr. Chvatík is the beneficial owner of the Peak House and entitled to the funds. Harvard Holdings seeks to oppose the release of the restraining order and to show that the funds in question are beneficially owned by Kožený. Therefore, the Court should permit Harvard Holdings to intervene to oppose the release of the restraining order.

---

[30] Fed. R. Civ. P. 24(b)(2); *see Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 157 (S.D.N.Y. 2003); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978).

[31] *U.S. Postal Serv,* 579 F.2d at 192 (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)).

[32] *Mass. Bricklayers & Mason Funds v. Deutsche Alt-A Secs.*, 273 F.R.D. 363, 365 (E.D.N.Y. 2011).

## III.
## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Harvard Holdings respectfully requests that it be permitted to intervene in this proceeding to oppose the release of the restraining order.

Respectfully submitted,

_____/s/_____

Michael D. Nolan
Edward G. Baldwin
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, N.W., Suite 1100
Washington, D.C.  20006
Telephone:  (202) 835-7524
Fax:  (202) 263-7508
mnolan@milbank.com

Sander Bak
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5125

*Attorneys for*
*Harvardský Průmyslový Holding, A.S.*

Dated:  May 25, 2012

**Certificate of Service**

   I hereby certify that I have this day served the foregoing document upon the parties listed below via the Court's ECF system, as well as by placing copy in the United States Mail, postage prepaid, addressed to:

    Preet Bharara, Esq.
    United States Attorney
    for the Southern District of New York
    U.S. Attorney's Office
    One St. Andrew's Plaza
    New York, NY 10007
    preet.bharara@usdoj.gov
    *Attorneys for the United States of America*

    Harry A. Chernoff
    Assistant U.S. Attorney
    1 Saint Andrew's Plaza
    New York, NY 10007
    Robertson Park
    Department of Justice
    Criminal Division
    950 Pennsylvania Avenue
    Washington, DC 20530-0001.

    James Nesland
    Law Offices Of James E. Nesland, Llc
    14252 East Caley Avenue
    Aurora, CO 80016
    Telephone: (303) 807-9449
    *Attorneys for Claimants Landlocked*
    *Shipping Company and Dr. Jitka Chvatik*

Dated at Washington, D.C., this 25th day of May 2012.

                     _____/s/_____
                       Michael D. Nolan